IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


ANTHONY WHITEHURST,
      Petitioner,

vs.                                    Case No.:  3:12cv194/RV/EMT

MICHAEL D. CREWS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 16).  Petitioner filed a reply (doc. 19).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 16).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2009-CF-1220, with two counts of sexual battery with slight force (Counts 1 and

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 16).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

2) and one count of lewd or lascivious molestation of a victim 12 years of age or older but less than 16 years of age (Count 3) (Ex. B).  Following a jury trial, he was found guilty as charged (Exs. C1, C2, C3, D).  On October 28, 2009, he was sentenced to concurrent terms of fifteen (15) years of imprisonment, with pre-sentence jail credit of 230 days (Exs. K, L).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-5935 (Ex. O).  The First DCA affirmed the judgment per curiam without written opinion on September 14, 2010, with the mandate issuing September 30, 2010 (Ex. S).  Whitehurst v. State, 43 So. 3d 699 (Fla. 1st DCA 2010) (Table).  Petitioner did not seek further review.

On October 20, 2010, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D10-5712, alleging ineffective assistance of appellate counsel (Exs. T1, T2).  The First DCA denied the petition on the merits on March 2, 2011, and denied Petitioner's motion for rehearing on April 27, 2011 (Exs. W, X).  Whitehurst v. State, 60 So. 3d 422 (Fla. 1st DCA 2011) (Mem).

On January 27, 2011, Petitioner filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. Y).  In an order rendered April 27, 2011, the state circuit court dismissed the motion on the ground that it failed to include a proper oath (Ex. Z).  On May 4, 2011, Petitioner filed another Rule 3.850 motion (Ex. AA).  In an order rendered July 15, 2011, the state circuit court struck the motion as facially insufficient, with leave to file a facially sufficient motion "within a reasonable time" (Ex. BB).  Defendant supplemented his Rule 3.850 motion with additional factual allegations (Ex. CC).  The state circuit court summarily denied the motion on September 20, 2011 (Ex. DD).  Petitioner appealed the decision to the First DCA, Case No. 1D11-5848 (Ex. EE).  The First DCA affirmed the judgment per curiam without written opinion on January 11, 2012, with the mandate issuing March 22, 2012 (Ex. FF).  Whitehurst v. State, 81 So. 3d 422 (Fla. 1st DCA 2012) (Table).

On May 31, 2012, Petitioner filed a "Motion to Correct Sentence" (Ex. HH).  In an order rendered September 10, 2012, the state circuit court dismissed the motion as an impermissible successive Rule 3.850 motion (id.).  Petitioner appealed the decision to the First DCA, Case No. 1D12-5424 (id.).  The First DCA affirmed the judgment per curiam without written opinion on January

16, 2013, with the mandate issuing February 12, 2013. <u>Whitehurst v. State</u>, 105 So. 3d 528 (Fla. 1st DCA 2013) (Table).

On April 18, 2012, prior to filing his successive Rule 3.850 motion, Petitioner filed the instant federal habeas petition (doc. 1). Respondent concedes the petition is timely (doc. 16 at 7).

II.    TRIAL EVIDENCE

A review of the evidence adduced at trial provides context for Petitioner's claims. The victim in this case was a thirteen-year-old girl, J.B., whose mother was dating Petitioner at the time of the offenses (*see* Ex. C1 at 101–03, 201–02). J.B. testified that shortly before Christmas, in December of 2008, Petitioner was "putting grease in her hair" while she was sitting on the floor of the living room of her mother's apartment, and Petitioner put his hand down her pants and touched her vagina (*id.* at 105–06). J.B. testified Petitioner raped her on two subsequent occasions, after he had picked her up from school because she was sick (*id.* at 108–10). She testified the first rape occurred in her mother's bedroom (*id.*). Petitioner told her to pull her clothes down, and he put his penis in her vagina (*id.*). She testified that his penis was black, "sticking out," and hard, and it hurt when he put it in her vagina (*id.*). J.B. testified Petitioner also asked if she would let him put his "nut" in her mouth, but she said no (*id.* at 109–10). She testified he wore a condom and flushed it down the toilet (*id.* at 110). J.B. testified the second rape occurred on Thursday, March 5, at approximately 10:00 p.m. when her mother was at work (*id.* at 110–11). She testified Petitioner picked her up at school because she had a fever blister on her lip (*id.* at 110). She testified he took her home, took a shower, and then put his penis in her vagina again (*id.* at 111).

J.B. testified that on March 7, she told her mother about being raped (Ex. C1 at 111–14). She testified that a couple of hours prior to telling her mother, she (J.B.) was mad at Petitioner because he would not allow her to go to the neighbor's apartment (*id.*). J.B. admitted she first told her mother and police that an unknown man grabbed her from the porch at her home, dragged her down stairs into an apartment, and raped her (*id.* at 119–20, 126–30, 132–33, 142–44). J.B. testified that on March 7, after she told her mother about being raped, a family friend, LaCresha Newberry, took her to the hospital (*id.* at 111–14, 133–35). She testified her mother took her to the hospital again the next morning, on March 8 (*id.*). J.B. testified the next day, she told her school counselor about Petitioner's raping her (*id.* at 115–18, 133, 140). She testified that after she spoke to her counselor, she went

home, and Petitioner was there (*id.* at 115–18, 136–39). J.B. testified the police came to the home, and Petitioner jumped out of a window (*id.*). In a sworn affidavit dated March 9, 2009, J.B. stated Petitioner told her brother and sister to go to bed, and he "stick his thing in me" in her mother's bedroom (Ex. C2). In another sworn affidavit dated March 9, 2009, J.B. stated she was standing on the porch of her home when a man came upstairs, grabbed her arm, forced her down stairs into an apartment, and raped her (Ex. C3). Both of J.B.'s' affidavits were admitted into evidence.

Laura Worley, J.B.'s school counselor, testified that on Monday, March 9, J.B. told her Petitioner raped her the previous day, Sunday (Ex. C1 at 88–97). Ms. Worley testified J.B. told her the police came to her home and arrested Petitioner on Sunday (*id.* at 97). Lawrence Jones, a child protective investigator, testified he interviewed J.B. on March 9, 2009, and she told him that the previous Saturday, March 7, she was standing outside her home, and a man came up from downstairs, pulled her downstairs to another apartment, and sexually abused her (*id.* at 178–83).

Ginger Nowling, the records custodian for Sacred Heart Hospital, provided foundational testimony for the admission of J.B.'s medical records from March 7 and 8, 2009 (Ex. C1 at 166–70). Those records show that J.B. presented to the emergency room on the night of March 7, stating she had been sexually assaulted, but she left without being seen by medical staff (Ex. C3). The records show that J.B. was seen by Dr. Slevinski in the Emergicenter on March 8, complaining of burning exacerbated by urination (*id.*). Dr. Slevinski's notes state that J.B.'s mother told him she wanted J.B. "checked for her virginity," and was concerned J.B. had been sexually assaulted (*id.*). Dr. Slevinski's notes reflect that he informed J.B.'s mother that he must refer J.B. to the pediatric unit for an evaluation (*id.*). Dr. Slevinski noted J.B.'s mother became angry and "tried to change her story," but Slevinski told her that her allegation of sexual assault obligated him to refer J.B. for an evaluation in the pediatric unit (*id.*). The medical records show that J.B. was then seen by Dr. Gale Goyins (*id.*). Dr. Goyins noted that he spoke with J.B. and her mother separately, and both of them were also interviewed by nursing staff (*id.*). Dr. Goyins noted that both J.B. and her mother denied mentioning sexual assault (*id.*). Dr. Goyins also noted that J.B. admitted to consensual intercourse (*id.*). Dr. Goyins noted, "Mother concerned that pt [patient] may be sexually active, but denies any concern about abuse or assault, and pt agrees" (*id.*).

Jennifer Kay, a crime laboratory analyst for the Florida Department of Law Enforcement, testified she conducted genetic testing on semen and blood stains found on the bed sheets in J.B.'s mother's bedroom (Ex. C1 at 173–77). She testified that the semen stain matched Petitioner's DNA profile, but J.B.'s DNA profile did not match the blood on the sheets, and J.B. was excluded as a contributor to the mixture from the semen stain (*id.*).

Paul Tartarilla, an advanced registered pediatric nurse practitioner, testified he examined J.B.'s genitalia as part of a child protective services investigation (*id.* at 187–200). He testified J.B.'s genitalia was "completely normal" (*id.*). He testified he did not observe any scars or signs of bleeding, and there were no clinical signs of trauma (*id.*). He testified that penetration of the vagina with a penis would not tear the hymen unless there was forceful penetration (*id.*). He testified that transections or ripping of the hymen would be a common finding in a forceful rape (*id.*). He testified he did not observe any transections of J.B.'s hymen (*id.*).

Ms. Johnson, J.B.'s mother, testified that on Saturday, March 7, 2009, J.B. told her Petitioner had sexually assaulted her (Ex. C1 at 202–36). She testified she and Petitioner went to a wedding from 3:00–10:00 p.m. that day (*id.*). She testified while they were at the wedding, her children, including J.B., were at a neighbor's apartment (*id.*). Ms. Johnson testified J.B. was upset that day, because she wanted to spend the night at the neighbor's apartment, but Ms. Johnson would not allow it (*id.*). Ms. Johnson testified J.B. was crying and pouting (*id.*). She testified Petitioner agreed that J.B. should not spend the night at the neighbor's apartment, because people were smoking marijuana there (*id.*). Ms. Johnson testified J.B. was upset with both her and Petitioner (*id.*). Ms. Johnson testified that after she went to bed, she heard J.B. crying (*id.*). She asked J.B. why she was crying, and at first J.B. said a man pulled her in his house, but when Johnson questioned her further, J.B. said Petitioner raped her (*id.*). Ms. Johnson testified that prior to March 7, J.B. never acted traumatized or withdrawn, and she never appeared to be injured in any way (*id.*). She testified J.B. never acted as if she was frightened to be around Petitioner (*id.*). She testified that she would have noticed if something appeared to be wrong with J.B. (*id.*). Ms. Johnson testified she was home on the evening of March 5, and she was in bed sleeping at 10:00 that night (when J.B. said the second rape occurred) (*id.*).

III.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim. Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court

must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

IV.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury

---

[3] Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
       (A)  the applicant has exhausted the remedies available in the courts of the State; or
       (B) (i)  there is an absence of available State corrective process; or
            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and

expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

V.    PETITIONER'S CLAIMS[7]

A.    Ground Two: "Denied effective assistance of trial counsel."

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

[7] The undersigned re-ordered Petitioner's claims for organizational purposes.

Petitioner contends trial counsel was ineffective for failing to make an oral motion for judgment of acquittal ("JOA") on the ground that the evidence was insufficient to support the charges (doc. 1 at 4). He also contends counsel was ineffective for failing to argue that the prosecutor's use of Florida's "Rape Shield" law, Florida Statutes section 794.022, violated his right to confront and cross-examine the victim (*id.*). Additionally, Petitioner alleges defense counsel was ineffective for failing to present testimony from the following seven witnesses: Dr. Gayle Goins, Dr. Slevinski, J. Owens, L. Mason, D. Teamer, Stephen Cappas, and S. Travis (*id.*). Petitioner asserts he raised all of these issues in his Rule 3.850 motion and on appeal of the circuit court's denial of the motion (*id.* at 5).

Respondent contends Petitioner did not exhaust the issue of counsel's failure to argue that the prosecutor's use of Florida's Rape Shield law violated his right to confront and cross-examine the victim (doc. 16 at 21–23). Respondent asserts Petitioner did not raise the issue in his Rule 3.850 motion, which was the proper vehicle for presenting this claim of ineffective assistance of counsel (*id.*). Further, although Petitioner raised the issue in a motion for rehearing to the First DCA after the First DCA affirmed the lower court's denial of the Rule 3.850 motion, this did not satisfy the "fair presentation" requirement of § 2254, because Florida law provides that a court may not consider the merits of an issue presented for the first time in a motion for rehearing (*id.*). Moreover, any attempt to raise the issue in state court would be futile in light of Florida's prohibition on successive Rule 3.850 motions; therefore, the claim is procedurally barred from federal review (*id.*). With regard to Petitioner's remaining sub-claims—counsel's failure to make an oral motion for JOA on the ground that the evidence was insufficient to support the charges and counsel's failure to present testimony from the seven witnesses Petitioner identified—Respondent contends Petitioner failed to demonstrate that the state court's adjudication of the claims was contrary to or an unreasonable application of clearly established federal law (doc. 16 at 19–21, 23–56).

  1.  Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient

performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. *See* Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not,

or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal. See Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

> 2.     Federal Review of State Court Decision
>
> a.     Counsel's failure to make an oral motion for judgment of acquittal ("JOA") on the ground that the evidence was insufficient to support the charges

Petitioner raised this claim as Ground 1 in his Rule 3.850 motion (Ex. AA at 120, 137–43, Ex. CC). The state circuit court adjudicated the claim as follows:

> Defendant here alleges that counsel should have argued for a motion for judgement of acquittal based upon the State's lack of evidence. Defendant alleges that the only evidence against him was the inconsistent testimony of the victim and argues that her inconsistent statements alone cannot support his conviction.

This allegation is facially insufficient. Defendant does not allege what matters counsel should have brought to the Court's attention that would have supported his motion. Defendant avers that the State's evidence was insufficient because the victim's statements were inconsistent, but he fails to set forth any specific elements that the State failed to prove.

Even if this allegation were facially sufficient, it would still entitle Defendant to no relief as Defendant has failed to prove prejudice. Defense counsel made a motion for judgement of acquittal at the close of the State's case. The Court denied the motion and specifically enumerated what evidence the Court found that could support the charges, if believed by the jury.[FN 6] Defendant, therefore, has failed to show entitlement to relief on this count."

[FN 6: See Attachment 3, excerpt from trial transcript, at 162–63.]

(Ex. DD at 263–64). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. FF).

In the state postconviction court's order, the court expressly cited the two-pronged Strickland standard as the legal standard applicable to this claim (see Ex. DD at 262–63). Therefore, Petitioner is entitled to relief only if he demonstrates the state court's adjudication was unreasonable, either because it was based upon an unreasonable determination of the facts or it unreasonably applied Strickland.

The state court found as fact that defense counsel made a motion for judgment of acquittal at the close of the State's case. The court also found that the trial court denied the motion and specifically enumerated the evidence that could support the charges, if believed by the jury. The trial transcript shows that at the close of the State's case, defense counsel made the following argument:

MR. DAVIS [defense counsel]: Judge, there's been no testimony as far as—yeah, the State has failed to present a prima facie case as to the as charged [sic], February 24, 2009, which is the first count, there's been no testimony—with respect to the second count for sure. I'm not sure about the first count, but the second count, there's been no specific testimony about March 5, 2009, which is the date alleged. There's been some unspecified testimony about—I'm not going to say that there's not a prima facie case of—on that, but there hasn't been any testimony with respect to March 5th. I would like a little time, Judge, because I know we've got substantive evidence in with the sworn statement and then we have got her testimony up there. I'm not sure it's sufficient to go to the jury. I have to research it.
. . . .

MS. KEENAN [the prosecutor]: You Honor, we had testimony that February 24th, the day she was checked out of school, March 5th was the last time it happened, which was the Thursday before the Monday reported, and that December, it's alleged for the entire month of December.  She said it was sometime in December.

THE COURT:  She was fairly clear that on the Count 3, that that occurred in December of '08.  That was the first incident, Count 3, which is the lewd and lascivious, and she indicated the other two occurred after that.  It's not necessary that the State prove the exact date.  There has not been any bill of particulars or anything filed in relation to nailing it down to a particular date.  So if they prove that the crime occurred within, I think it's still two years, then it's sufficient.  And there's no question that she testified that the fondling part of it took place in December of last year and she indicated the other events occurred afterwards.  We are now talking July of '09 [when the trial occurred], and obviously I think the State has met the burden in regard to proving the date within the time that they are required to prove it.

She testified that he on, on those two second occasions, that he penetrated her sexually.  I think the State has proven a prima facie case.  Whether or not they have proven a case that's sufficient beyond a reasonable doubt, that's going to be a question for the jury.  But it certainly is a case that can go to the jury.  I think they have proven a prima facie case.  So we'll take and deny the defense motion.

(Ex. C1 at 161–63).

Petitioner failed to overcome the presumption of correctness of the state court's factual findings by clear and convincing evidence.  Although defense counsel did not present a complete argument, counsel raised the issue of whether the evidence was sufficient to submit the case to the jury. The trial court construed counsel's argument as a motion for JOA, and denied it on the ground that the State presented sufficient evidence, which the court identified, to submit the case to the jury. Petitioner failed to show a reasonable probability that the trial court would have granted the motion for JOA had defense counsel argued it differently.  Therefore, he failed to establish the state court's adjudication of this claim was an unreasonable application of Strickland.

### b.    Counsel's failure to call Dr. Gale Goyins, Dr. Slevinski, Jennifer Owens, Leilani Mason, Doyle Teamer, Stephen Cappas, and Summer Travis

Petitioner raised these claims as Grounds 2 through 8 in his Rule 3.850 motion (Ex. AA at 120–21, 144–72, Ex. CC).  The state circuit court adjudicated the merits of each claim (Ex. DD at

264–70). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. FF).

Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. Chandler v. United States, 218 F.3d 1305, at 1314 n.14 (11th Cir. 2000) (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518-19 (11th Cir. 1995) (en banc)). If the record is not complete regarding counsel's actions, then the courts should presume "that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some reasonable lawyer might do." Id. at 1314–15 n.15. "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." Waters, 46 F.3d at 1514. "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). The undersigned will separately review the state court's adjudication of Petitioner's claim as to each witness.

### 1.      Dr. Gale Goyins

In Ground 2 of Petitioner's Rule 3.850 motion, he asserted Dr. Gale Goyins would have testified that he spoke with J.B. and her mother, Ms. Johnson, at Sacred Heart Hospital on March 8, 2009 (Ex. AA at 146). Petitioner asserted Dr. Goyins would have testified Ms. Johnson told him that J.B. had been complaining of a burning sensation when she urinated, and Ms. Johnson expressed concern that J.B. was sexually active and requested a determination of whether J.B. was still a virgin (id.). Petitioner asserts Dr. Goyins would have testified Ms. Johnson and J.B. told him J.B. was not sexually abused or assaulted (id.). In support of Petitioner's assertions, he submitted J.B.'s medical records from Sacred Heart Hospital (id. at 178–85).

The state court adjudicated the claim as follows:

> Defendant alleges that if called as a witness, Dr. Goyins would have shown that the victim's testimony was inconsistent because the victim told Dr. Goyins that no sexual battery had occurred.

> This allegation is facially insufficient in that Defendant has failed to show prejudice. Defendant has listed no information to which Dr. Goyins could have testified that was not already before the jury. The hospital records indicating that the

victim had told Dr. Goyins that she had not been sexually abused were admitted into evidence.[FN 8]  Therefore, Dr. Goyins's testimony would have been unnecessary to show that the victim disavowed having been sexually battered.  Defendant has failed to show that he was prejudiced by the absence of Dr. Goyins's testimony.  This allegation cannot entitle Defendant to relief.

[FN 8:  See Attachment 4, trial exhibit.]

(Ex. DD at 264–65).

The trial record confirms the state court's factual finding that the records from J.B.'s March 8, 2009 visit to Sacred Heart Hospital were admitted into evidence (Ex. C1 at 166–70, Ex. C3).  As previously noted, those records show that J.B. presented to the emergency room on the night of March 7, stating she had been sexually assaulted, but she left without being seen by medical staff (Ex. C3).  The records also show that J.B. was seen by Dr. Slevinski in the Emergicenter on March 8, complaining of burning exacerbated by urination (id.).  Dr. Slevinski's notes state that J.B.'s mother told him she wanted J.B. "checked for her virginity," and was concerned J.B. had been sexually assaulted (id.).  Dr. Slevinski's notes state he informed J.B.'s mother that he must refer J.B. to the pediatric unit for an evaluation (id.).  Dr. Slevinski noted J.B.'s mother became angry and "tried to change her story," but Slevinski told her that her allegation of sexual assault obligated him to refer J.B. for an evaluation in the pediatric unit (id.).  J.B.'s records show that Dr. Goyins noted that he spoke with J.B. and her mother separately, and both of them were also interviewed by nursing staff (id.).  Dr. Goyins noted that both J.B. and her mother denied mentioning sexual assault (id.).  Dr. Goyins also noted J.B. admitted to consensual intercourse, but Goyins did not observe any vaginal discharge or bleeding (id.).  Dr. Goyins noted, "Mother concerned that pt [patient] may be sexually active, but denies any concern about abuse or assault, and pt agrees" (id.).

The record confirms the state court's finding that the substance of Dr. Goyins proposed testimony was presented to the jury via J.B.'s medical records.  Because this information was before the jury, Petitioner failed to show a reasonable probability the result of trial would have been different had defense counsel called Dr. Goyins as a witness.  See Rose v. McNeil, 634 F.3d 1224, 1243 (11th Cir.), cert denied, — U.S. —, 132 S. Ct. 190, 181 L. Ed. 2d 98 (2011) ("Obviously, a petitioner cannot satisfy the prejudice prong of the Strickland test with evidence that is merely cumulative of evidence already presented at trial."); Devier v. Zant, 3 F.3d 1445, 1452 (11th Cir. 1993) (failure to

call other available witnesses during penalty phase was not ineffective, because additional witnesses would have testified to essentially the same impressions and sentiments about petitioner as other witnesses and would have added little to the weight of the mitigating evidence). Therefore, the state court's adjudication of this claim was not unreasonable under Strickland.

2.     Dr. Richard Slevinski

In Ground 3 of Petitioner's Rule 3.850 motion, he alleged defense counsel informed him that Dr. Richard Slevinski stated his willingness to testify as a defense witness, but Dr. Slevinski told counsel he was not available to testify until July 22 or 23, 2009 (Petitioner's trial was July 13, 16, and 17) (Ex. AA at 150). Petitioner asserted Dr. Slevinski would have testified that Ms. Johnson was concerned that J.B. had been sexually assaulted (*id.*). Petitioner asserts Dr. Slevinski also would have testified that when he spoke to the victim without her mother, the victim denied she was sexually assaulted and admitted she had consensual sex (*id.*). Petitioner asserts Dr. Slevinski would have testified that J.B. and her mother denied J.B. was ever sexually assaulted (*id.*).

The state court adjudicated the claim as follows:

> Defendant avers that had Dr. Slevinski testified, he would have stated that the victim had told him, out of her mother's presence, that the victim had not been sexually abused and that the victim was sexually active.

> As with the previous ground, this allegation is facially insufficient in that Defendant has failed to show prejudice. The disavowal of sexual abuse that Defendant states would have been garnered from Dr. Slevinski was already before the jury in the hospital records.[FN 9] Therefore, Defendant has failed to show that he was prejudiced by the absence of Dr. Slevinski's testimony.

> Additionally, Defendant has not shown that the victim's admission to having had consensual sex would have been any more admissible coming from Dr. Slevinski than it would have been coming from cross-examination of the victim. The Court ruled that the rape-shield law made that information inadmissible.[FN 10] Defendant has not shown that the information would have been admissible, despite the rape-shield law, had counsel only asked it of Dr. Slevinski. This allegation cannot entitle Defendant to relief.

> [FN 9: See Attachment 4.]

> [FN 10: See Attachment 3 at 135.]

(Ex. DD at 265).

As the state court found, the substance of Dr. Slevinski's proposed testimony was presented to the jury through J.B.'s medical records. Petitioner failed to satisfy both prongs of the Strickland standard with regard to counsel's failure to call Dr. Slevinski as a witness. Therefore, the state court did not unreasonably apply Strickland in denying this claim.

### 3.     Jennifer Owens

In Ground 4 of Petitioner's Rule 3.850 motion, he asserted Jennifer Owens, an investigator with the Department of Children and Family Services, would have testified she interviewed J.B. on March 9, 2009, and J.B. told her Petitioner had sexually assaulted her in her mother's bedroom the previous Saturday, March 7, after Petitioner told her younger sister to go to bed, and while her younger brother was in his room listening to the radio (Ex. AA at 154–55). Petitioner asserted Jennifer Owens interviewed J.B.'s younger brother and sister, and they told her different stories regarding their whereabouts on the night of March 7 (id.). Petitioner asserted Owens would have further testified that when she interviewed J.B. again on March 10, J.B. contradicted her prior statements regarding the whereabouts of her siblings, and stated the rape took place on March 5 (id.). Petitioner argued Owens's testimony would have impeached J.B.'s credibility.

The state court adjudicated the claim as follows:

> Defendant avers that this witness knew that the victim's story did not match the versions of events related by the victim's younger siblings. Defendant also alleges that Owens "could have testified to the inconsistent/contradictory statements made by the victim."

> At trial, defense counsel planned to call Owens to the stand to testify to the statements of the victim's siblings. The Court, however, refused to allow Owens to testify to the hearsay statements of the children.[FN 11] Counsel was not deficient for failing to elicit testimony that the Court refused to allow.

> As for the allegation that Owens would have testified to the victim's inconsistencies, the Court finds this portion of the allegation to be facially insufficient because Defendant has failed to allege sufficient prejudice. Defendant has failed to show any evidence that would have come from Owens's testimony that was not already before the jury. The inconsistencies and contradictory statements made by the victim were clearly shown to the jury during the testimonies of the victim herself, the victim's mother, and the child protective services investigator.[FN 12] Even were the allegation facially sufficient, counsel is not ineffective for failing to adduce testimony

that would have been merely cumulative.  See Darling v. State, 966 So. 2d 366, 378 (Fla. 2007).  This allegation cannot entitle Defendant to relief.

[FN 11:  See Attachment 3 at 238–39.]

[FN 12:  See Attachment 3 at 125–26, 180–81, and 211.]

(Ex. DD at 266).

The trial record confirms the state court's factual finding that defense counsel planned to call Jennifer Owens as a witness to testify to her conversations with J.B.'s siblings (Ex. C1 at 237–38). The trial court ruled that Ms. Owens's testimony regarding statements of the siblings was inadmissible hearsay (id. at 238).  The federal habeas court must abide by the state court's interpretation of state law.  See Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  Therefore, this court is bound by the state court's determination that Jennifer Owens's testimony regarding statements of J.B.'s siblings would have been inadmissible.  Defense counsel was not ineffective for failing to present inadmissible testimony.  See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005).  Additionally, as the state court found, defense counsel presented evidence of the victim's inconsistent and contradictory statements through his cross-examination of the victim, admission of J.B.'s medical records which included her statements to medical personnel, and the presentation of testimony from Ms. Worley (J.B.'s school counselor), Child Protective Investigator Lawrence Jones, and J.B.'s mother.  Petitioner failed to show a reasonable probability the outcome of trial would have been different had Jennifer Owens testified.  Therefore, the state court's adjudication of this claim was not unreasonable.

4.    Leilani Mason

In Ground 5 of Petitioner's Rule 3.850 motion, he asserted Leilani Mason, a case coordinator with the child protection team of Children's Medical Services, would have testified J.B. told her several different versions of the same incident (Ex. AA at 158).  In support of this assertion, he submitted a report signed by Ms. Mason, which states she "staffed" the case with Investigator Jennifer Owens (id. at 190–91).  Mason's report states J.B. originally told Owens that a neighbor raped her but then disclosed she was raped by her mother's boyfriend (id.).  The report states J.B. reported that

her mother's boyfriend used a condom (*id.*). It also states a medical and forensic examination of J.B. was scheduled (*id.*).

The state court adjudicated the claim as follows:

> Defendant alleges that Mason would have testified, had she been called, that the victim had told her several versions of the offense. Defendant also alleges that Mason's testimony would have supported Defendant's theory that "the child victim was merely attempting to get even with the defendant for not allowing her to go out at night to a neighbor's house."
>
> As noted above, the inconsistencies were made very clear to the jury, and counsel is not ineffective for failing to adduce cumulative testimony. As for the allegation that Mason's testimony would have supported Defendant's theory, the allegation is not facially sufficient. Although Defendant alleges that Mason's testimony would have bolstered his theory of defense, he does not allege what she would have said that would have indicated to the jury that the victim was "attempting to get even." Without specific allegations, the Court cannot properly evaluate Defendant's claims. As Defendant has been given an opportunity to make his claim facially sufficient, but a portion is still insufficient, and the remainder of the claim is not meritorious, this allegation with regard to Witness Mason does not entitle Defendant to relief.

(Ex. DD at 266–67).

As the state court found, the jury was presented with evidence that J.B. originally reported she was raped by a neighbor and then changed her story by stating she was raped by Petitioner. Therefore, Ms. Mason's testimony would have been cumulative. Counsel is not deemed ineffective for failing to present cumulative evidence. *See* <u>Rose</u>, 634 F.3d at 1243; <u>Devier</u>, 3 F.3d at 1452. Therefore, Petitioner failed to demonstrate the state court's adjudication of this claim was an unreasonable application of <u>Strickland</u>.

### 5.    <u>Doyle Teamer</u>

In Ground 6 of Petitioner's Rule 3.850 motion, Petitioner asserted Doyle Teamer, Petitioner's cousin, would have testified that Petitioner and J.B. picked up Teamer at his residence, and Petitioner dropped off J.B. at her home, while Petitioner and Teamer went to another location to repair a car (Ex. AA at 162). Petitioner asserted Teamer would have further testified that after he and Petitioner finished the car repair, Petitioner dropped Teamer off at his home at 2:50 p.m. (*id.*).

The state court adjudicated the claim as follows:

Defendant alleges that Teamer would have testified that he was with Defendant from the time that Defendant picked the victim up from school to take her home until 2:50 pm the day of the offense.

First, the Court notes that Defendant does not make clear in his allegation which offense Teamer could have refuted. Three offenses were charged: December 2008; February 2009; and March 2009. At trial, two offenses, the sexual batteries, were alleged to have occurred after Defendant picked the victim up from school.[FN 13] Therefore, the Court deduces that Defendant is alleging that Teamer could have provided him an alibi for one of those alleged offenses.

[FN 13: See Attachment 3 at 108–11.]

The actual dates of the sexual batteries were in dispute during trial,[FN 14] and the victim did not pinpoint a specific time that either of the sexual batteries had occurred.[FN 15] In fact, on cross-examination, defense counsel elicited two different statements from the victim regarding the timing of the March battery.[FN 16] Hence, it would have been difficult, if not impossible, for any witness to give Defendant an alibi for the times and dates of the offenses.

[FN 14: See Attachment 3 at 125–33 and 161–63.]

[FN 15: See Attachment 3 at 108–111.]

[FN 16: See Attachment 3 at 126 and 133. Also, the victim's mother's testimony refuted both the time frames that defense counsel had elicited during his cross-examination of the victim. See Attachment 3 at 219–20 and 222–23.]

Even had Teamer somehow showed that Defendant had been with him until 2:50 p.m. on one of the actual dates of the sexual batteries, it would not have eliminated the possibility that the offense had occurred. The testimony at trial was that the mother regularly worked from "7:00 [a.m.] to 3:30 [p.m.] every day" and also had a night job.[FN 17] Defendant, therefore, would still have had at least half an hour of opportunity to sexually batter the victim after Teamer had left and before the mother returned home. Teamer's testimony, even had it been offered, would not necessarily have changed the outcome of trial. This allegation cannot entitle Defendant to relief.

[FN 17: See Attachment 3 at 214 and 218–19.]

(Ex. DD at 267–68).

Initially, Petitioner did not submit an affidavit from Mr. Teamer stating he was available to testify and setting forth the substance of his proposed testimony; therefore, Petitioner's allegations as

to the content of Mr. Teamer's proposed testimony are purely speculative. Further, assuming arguendo that Mr. Teamer would have testified as Petitioner alleges, the testimony would not have provided an alibi or otherwise eliminated the possibility that Petitioner committed the offenses, for the reasons articulated by the state court. Therefore, Petitioner failed to show that defense counsel's failure to call Mr. Teamer was unreasonable, and Petitioner also failed to satisfy his burden of showing a reasonable probability the outcome of his trial would have been different had counsel presented Mr. Teamer's testimony.

6.    <u>Stephen Cappas</u>

In Ground 7 of Petitioner's Rule 3.850 motion, Petitioner asserted that Stephen Cappas, an investigator with the Escambia County Sheriff's Department, would have testified that when J.B. and her mother went to Sacred Heart Hospital, they both told hospital staff that J.B. had not been raped, and J.B. told Dr. Slevinski she had not been raped (Ex. AA at 166). Petitioner asserted Cappas also could have testified that J.B. told child protective investigators inconsistent stories regarding where and when the rapes occurred (*id.* at 166–67). Petitioner also asserted Cappas would have admitted he told child protective services staff not to speak with Petitioner, because he (Cappas) was attempting to turn the victim's mother's story around and say what Cappas wanted her to say (*id.* at 167). In support of his assertions as to Cappas's testimony, Petitioner submitted a copy of Cappas's investigative report and reports of protective services investigators.

The state court adjudicated the claim as follows:

> The Court understands Defendant to be alleging that Cappas could have testified to the following:  1) the victim's disavowal of sexual abuse; and 2) the victim's statements at her forensic interview.[FN 18]

> [FN 18:  Defendant also makes a passing note that Cappas was attempting to "turn [the] victim's mother, Jameelah Johnson's, story around."  He does not, however, explain the link between his allegations and this statement; hence, the Court must deny the allegation as facially insufficient.

> As noted above, the victim's statements during her hospital visit were before the jury in the form of hospital reports.[FN 19] Cappas's testimony was not, therefore, necessary to inform the jury that the victim had disavowed having been sexually battered.

[FN 19: <u>See</u> Attachment 4.]

Defendant has shown no reason that Cappas could have testified to the victim's statements in her forensic interview. He acknowledges in his motion that Cappas was not one of the investigators involved in the interview. Therefore, even had the victim's hearsay statements at the interview been admissible, Cappas could not have testified thereto as his information would have been second-hand, making the testimony double hearsay. Defendant has not alleged, nor does the Court find, any reason that such double hearsay would have been allowed by the Court.

(Ex. DD at 268–69).

As the state court found, J.B. and her mother's statements to hospital staff were presented to the jury in the medical records; therefore, any additional evidence would have been cumulative. Additionally, this court is bound by the state court's determination that Cappas's testimony regarding J.B.'s statements to child protective services workers during interviews would have been inadmissible. Defense counsel was not ineffective for failing to present inadmissible testimony.

Regarding Cappas's proposed testimony that he was "attempting to turn the victim's mother's story around and say what he wanted her to say," Petitioner bases this assertion on a report of Child Protective Investigator Paul Maxwell, which states, in relevant part:

Cappas requested that he [Petitioner] not be interviewed at this [time]. He stated he is trying to contact the mother so he can interview her. He stated he is trying to pit the mother against the boyfriend, hopefully she would flip on him. He stated that he would rather the Department did not interview him and not let on that law enforcement is involved. If possible, postpone his interview until Friday. He said that he wants to see what the mother has to say about this incident and why she did not take her child to the hospital.

(Ex. AA at 198). This evidence suggests Investigator Cappas attempted to obtain damaging information regarding Petitioner from J.B.'s mother, but it does <u>not</u> suggest Cappas attempted to obtain <u>false</u> damaging information from her. Further, the jury heard testimony from J.B.'s mother that Cappas threatened that if she did not tell him the truth, including where Petitioner was, Cappas would "put me up under the ground with Anthony Whitehurst" (Ex. C1 at 235–36). Petitioner failed to show a reasonable probability the result of his trial would have been different had counsel presented Cappas's testimony that he attempted to get J.B.'s mother to "flip" on Petitioner. Therefore, the state court's adjudication of this claim was not an unreasonable application of <u>Strickland</u>.

7.     <u>Summer Travis</u>

In Ground 8 of Petitioner's Rule 3.850 motion, Petitioner asserted Summer Travis, his "lady friend," would have testified that Petitioner was with her at her house when the alleged rape occurred on March 5, 2009 (Ex. AA at 171). In support of his assertion, Petitioner submitted an affidavit of Ms. Travis, which states:

> Starting Jan. 2009 myself and Anthony spent 5 to 6 days out the week [sic] together from Jan. to March till [sic] the time Anthony was put into incarceration. Anthony also had a schedule when it came to spending time with me. I didn't think he thought it was schedule [sic] but me it was [sic]. During the week, I spent a lot of time with him. I would hear from Anthony, meaning he would be at my house when he dropped Jamelia (the little girl mom [sic]) off at work between 7 or 9 would come [sic] to my home as soon as he dropped her off. We would leave my home and go feed his dog @ [sic] his niece [sic] home, by then it was noon, he would then drop me off, take his niece to lunch, communicate with me throughout the day. Anthony would have to p/up [sic] Jamlia around the evening time; spend a little time with her. She would then go to her second job. While she was at work Anthony would be at his niece home [sic], sometimes I accompanied and at times I wouldn't. Anthony would stay at my house until midnight usually leave around 11:45 or 12:00 a.m. and this occured M-F [sic], he usually spent the weekends with her & her kids. But, ever chance [sic] Anthony got he was with me.

(*id.* at 200–02).

The state court adjudicated the claim as follows:

> Defendant asserts that Travis would have testified that Defendant was with her at the time of the alleged March offense.

> If the attached affidavit embodies the substance of what Travis's testimony would have been at trial, the Court does not find that her testimony would have changed the outcome of the trial. The affidavit attached by Defendant included generalities regarding the time Travis spent with Defendant, including his "schedule" of spending time with her from January 2009 until Defendant's incarceration. However, Travis does not state in her affidavit any specific date and time that Defendant was definitely with her.

> Additionally, as noted above, the date and time of the March offense were never specifically pinpointed at trial. The victim alleged different dates in March as well as varying times for the offense. Therefore, even had Travis testified that Defendant was with her at a specific time on March 5, 2009, that testimony would not necessarily have changed the outcome at trial. Considering these facts, the Court finds that Defendant has not shown either deficiency of counsel or prejudice to his defense due to the failure to call this witness, and this allegation cannot entitle Defendant to relief.

(Ex. DD at 269–70).

Petitioner failed to show a reasonable probability the outcome of trial would have been different had the jury heard Ms. Travis's general statements regarding the time he spent with her from January of 2009 to the date of his incarceration. Therefore, the state court's adjudication of this claim was not an unreasonable application of <u>Strickland</u>.

> c.  <u>Counsel's failure to argue that the prosecutor's use of Florida's Rape Shield law violated his right to confront and cross-examine the victim</u>

The record supports Respondent's exhaustion argument with respect to Petitioner's sub-claim that defense counsel was ineffective for failing to argue that the prosecutor's use of Florida's Rape Shield law violated his right to confront and cross-examine the victim. Petitioner did not present this argument in his Rule 3.850 motion or the supplement thereto (*see* Exs. AA, CC). Petitioner did not file an initial brief on appeal on the circuit court's summary denial of his Rule 3.850 motion; therefore, the First DCA reviewed the record and determined it conclusively showed Petitioner was not entitled to relief on the claims he raised in the lower court (Ex. FF). *See* Fla. R. App. P. 9.141(b)(2). The First DCA conducted its review and affirmed the lower court without explanation. Petitioner filed a motion for rehearing of the First DCA's decision, in which he argued for the first time that defense counsel was ineffective for failing to argue that Florida's Rape Shield law unconstitutionally prohibited him from confronting the victim about her statement to Dr. Slevinski that she had consensual sex (Ex. GG). Under Florida law, the First DCA was precluded from considering the merits of Petitioner's argument, because it was raised for the first time in the motion for rehearing. *See* Fla. R. App. P. 9.330(a); <u>Cleveland v. State</u>, 887 So. 2d 362, 364 (Fla. 5th DC 2004). Petitioner thus failed to properly present the issue to the state courts. Any further attempt to present the claim to the state courts would be futile, because another Rule 3.850 motion would be subject to dismissal as successive. *See* Fla. R. Crim. P. 3.850(f). Therefore, the issue is procedurally barred from federal review.

As previously discussed, to overcome a procedural default such that the federal habeas court may consider the merits of a claim, Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. *See* <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470. In the instant case, Petitioner does not that allege an external impediment prevented him from raising

this ineffective assistance of counsel claim in his Rule 3.850 motion. *See* McCleskey, 499 U.S. at 497. Further, although Petitioner asserts "actual innocence" and "manifest injustice" in his reply (doc. 19 at 1–2), he failed to satisfy the Schlup standard for review of his claim through the "fundamental miscarriage of justice" portal. Petitioner alleges the testimony of the witnesses whom defense counsel failed to call, identified *supra* in sub-claim b, would have established his actual innocence (*see id.*). However, he failed to show it is more likely than not no reasonable juror would have convicted him had the jury heard any, or all, of the testimony of those witnesses. Therefore, he failed to demonstrate he is entitled to federal review of this claim.

     B.    Ground Three: "Denied effective assistance of appellate counsel."

Petitioner contends appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred by denying defense counsel's motion to interview the jurors (doc. 1 at 5).

Respondent states Petitioner appears to have exhausted this claim by raising it in his state habeas petition (doc. 16 at 57–58). Respondent contends the state court adjudicated the merits of the claim, and the state court's adjudication is entitled to deference (*id.* at 58–63).

     1.    Clearly Established Federal Law

The proper standard for evaluating a claim of ineffective assistance of appellate counsel is the Strickland standard set forth *supra*. *See* Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." Strickland, 466 U.S. at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. Jones v. Barnes, 463 U.S. 745, 753–54, 103 S. Ct. 3308, 3314, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, Petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, Petitioner would have prevailed on appeal. *See* Robbins, 528 U.S. at 285.

The Eleventh Circuit has issued several decisions interpreting the Strickland standard with regard to claims of ineffective assistance of appellate counsel. Appellate counsel cannot be deemed

ineffective for failing to raise issues "reasonably considered to be without merit." United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984)). Moreover, the arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. Nyhuis, 211 F.3d at 1344 (citing Miller v. Dugger, 858 F.2d 1536, 1538 (11th Cir. 1988)).

2.      Federal Review of State Court Decision

Petitioner raised this claim in his state habeas petition (Ex. T1 at 1–5). The First DCA denied the petition on the merits, without explanation (Ex. W).

With regard to the "contrary to" prong of the AEDPA standard, although the First DCA did not cite Strickland, a state court need not cite to, nor even be aware of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The First DCA's decision could have been based upon the theory that Petitioner's appellate counsel did not perform unreasonably by failing to raise a claim of trial court error with regard to denial of defense counsel's request to interview jurors, because that was a weaker argument than the argument presented by appellate counsel on direct appeal (that is, that the trial court erred by denying Petitioner's motion for new trial, because the verdict was against the weight of the evidence) (Ex. Q).

In the trial court, defense counsel asserted two sources of authority for his request to interview jurors, Rule 3.575 of the Florida Rules of Criminal Procedure and Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar. Rule 3.575 provides:

A party who has reason to believe that the verdict may be subject to legal challenge may move the court for an order permitting an interview of a juror or jurors to so determine. The motion shall be filed within 10 days after the rendition of the verdict, unless good cause is shown for the failure to make the motion within that time. The motion shall state the name of any juror to be interviewed and the reasons that the party has to believe that the verdict may be subject to challenge. After notice and hearing, the trial judge, upon a finding that the verdict may be subject to challenge, shall enter an order permitting the interview, and setting therein a time and a place for the interview of the juror or jurors, which shall be conducted in the presence of the court and the parties. If no reason is found to believe that the verdict may be subject to challenge, the court shall enter its order denying permission to interview.

Fla. R. Crim. P. 3.575 (2004).

Rule 3.575 does not abrogate Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar. *See*

Fla. R. Crim. P. 3.575, commentary. Rule 4-3.5(d)(4) provides:

**(d) Communication With Jurors.** A lawyer shall not:
. . . .
(4) after dismissal of the jury in a case with which the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge; provided, a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist; and provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview. The provisions of this rule do not prohibit a lawyer from communicating with members of the venire or jurors in the course of official proceedings or as authorized by court rule or written order of the court.

Fla. State Bar Rule 4-3.5 (1993). In order to have "reason to believe" that grounds for a legal challenge to the verdict exist, there should be a "reason to believe that one or more of the jurors violated their oath and disregarded the instructions of the court." Bullard v. State, 324 So. 2d 652, 654 (Fla. 1st DCA 1975). A trial court's decision on a motion to interview jurors is reviewed for abuse of discretion. *See* Gray v. State, 72 So. 3d 336, 337 (Fla. 4th DCA 2011).

Juror interviews are not permitted relative to any matter that inheres in the verdict itself and relates to the jury's deliberations. *See* Gray, 72 So. 3d 336; Reaves v. State, 826 So. 2d 932, 943 (Fla. 2002). "To this end, any jury inquiry is limited to allegations which involve an overt prejudicial act or external influence, such as a juror receiving prejudicial nonrecord evidence or an actual,

express agreement between two or more jurors to disregard their juror oaths and instructions." <u>Reaves</u>, *supra* (footnote omitted). A claim of premature deliberations may be asserted following an adverse jury verdict, because "[t]he timing of deliberations does not inhere in the verdict." <u>Williams v. State</u>, 793 So. 2d 1104, 1106 (Fla. 1st DCA 2001) (emphasis added). Accordingly, the issue of whether deliberations were undertaken prematurely "is an appropriate subject of judicial inquiry." *Id.*

In <u>Williams v. State</u>, the First DCA held that allegations that two jurors discussed the case during trial and expressed an opinion as to guilt before the close of the evidence was sufficient to set forth a prima facie case of premature deliberations by two members of the jury. 793 So. 2d at 1107–08. The court found this to be the case even though the affidavits did not allege that the jurors relied on outside information in coming to their opinion. *Id.* at 1107.

Similarly, in <u>Ramirez v. State</u>, 922 So. 2d 386 (Fla. 1st DCA 2006), the First District followed its holding in <u>Williams</u> and held that the trial court should have allowed juror interviews following an allegation that an alternate juror told a bailiff that the jury was split as to the defendant's guilt until after the jurors heard the defendant's testimony. The court explained that "[d]eciding a case before hearing all the evidence is antithetical to a fair trial." *Id.* at 390.

By contrast, a lone juror's attempt to discuss the defendant's guilt prematurely is insufficient to warrant juror interviews. *See* <u>Reaves</u>, 826 So. 2d at 943. In <u>Reaves</u>, the defendant sought juror interviews in a postconviction motion, alleging that one juror attempted to discuss guilt prematurely. The Florida Supreme Court found that this allegation was insufficient to warrant juror interviews:

> In the instant case, Reaves has alleged that one juror attempted to discuss guilt prematurely. This contention does not involve any agreement among the other jurors to disregard their oaths and ignore the law, nor does it imply that the jury was influenced by external sources or improper material. Reaves' assertion, which involves a lone juror's understanding of the jury instructions, is "a matter which essentially inheres in the verdict itself"; hence, juror interviews are not permissible.

*Id.*

In the instant case, within ten (10) days of the jury's verdict, defense counsel filed a Notice of Intent to Interview Juror, pursuant to Rule 4-3.5(d)(4) of the Rules Regulating the Florida Bar (Ex. G). The notice did not state the reasons defense counsel believed that the verdict may be subject to challenge (*id.*). The State filed a motion to quash defense counsel's notice (Exs. H, I). Apparently,

defense counsel then filed a motion to interview the jurors, pursuant to Rule 3.575, which alleged defense counsel had reason to believe that the verdict was subject to legal challenge based upon the statement of Janice Hinshaw, an alternate juror, during a recorded interview with defense counsel's investigator, that during the first break during trial, the juror who ultimately served as foreperson, John Palmer, made disparaging remarks about defense counsel, including his opinion that defense counsel was essentially incompetent, discussed his contempt for defense counsel, and stated his belief that the judge shared this negative view of defense counsel (Ex. J at 57–71, 76–78; *see also* Ex. T2, Affidavit of James Martin, Investigator with the First Judicial Circuit Public Defender's Office).[8]  The State filed a second motion to quash defense counsel's motion (*see* Ex. I at 49).

The trial court held a hearing on the motions.  During the hearing, defense counsel proffered Ms. Hinshaw's recorded statement, as well as the recorded statement of the second alternate juror, John Musgrove, who stated he did not recall hearing Mr. Palmer make the alleged comments (Ex. I at 79; *see also* Ex. C1 at 316).  The trial court did not listen to the recorded statements of Ms. Hinshaw and Mr. Musgrove, but assumed defense counsel's representations of their content was accurate (Ex. I at 84).  Defense counsel argued Mr. Palmer's conduct constituted juror misconduct, because it violated two of the court's instructions:  (1) the court's instruction prior to the first break that the jurors should not discuss the case, and (2) the court's instruction during trial that a juror's feelings about the attorneys should not influence the verdict (*id.* at 83).[9]

---

[8] Defense counsel's Rule 3.575 motion is not part of the record; however, the basis for his motion is included in the record of the hearing held on the issue.

[9] The trial court instructed the jury as follows:

This case must be decided only upon the evidence that you have heard from the testimony of the witnesses and that you've seen in the form of exhibits in evidence and from these jury instructions.

This case must not be decided for or against anyone because you feel sorry for anyone or that you are angry at anyone.

Remember that the lawyers are not on trial and your feelings about them should not influence your discussion in this case.

(Ex. C1 at 311).

Defense counsel's allegation that Mr. Palmer discussed the case prematurely during the first break of trial was insufficient to warrant juror interviews, since it does not suggest an agreement among the other jurors to disregard their oaths and ignore the law, nor does it suggest that the jury was influenced by external sources or improper material.  *See* Reaves, 826 So. 2d at 943.  Additionally, the allegations that Mr. Palmer expressed his dislike of defense counsel, made disparaging remarks about defense counsel, and expressed his belief that the trial judge disliked defense counsel, did not provide a legal basis for juror interviews on the ground that Mr. Palmer  disregarded the trial court's instructions that any juror's feelings about the lawyers should not influence the deliberations, because those allegations related to the jury's deliberations and thus inhered in the verdict itself.  *See id.* (citing Fla. Stat. § 90.607(2)(b); Johnson v. State, 593 So. 2d 206, 210 (Fla. 1992); Baptist Hosp. of Miami, Inc. v. Maler, 579 So. 2d 97, 99 (Fla. 1991)).  Therefore, Petitioner failed to show a reasonable probability of success on appeal had appellate counsel argued error with respect to the trial court's denial of defense counsel's request to interview jurors.  Moreover, success on appeal of this issue would not have meant reversal of Petitioner's conviction or even an automatic retrial. Instead, the appellate court would have reversed the trial court's denial of defense counsel's requests for juror interviews, and the case would have been remanded to the trial court for further proceedings with instructions that an opportunity for juror interviews be provided.  *See* Gray, 72 So. 3d at 338. On remand, the defense would have borne the initial burden of showing either that prejudice resulted or that the alleged juror misconduct was of such character as to raise a presumption of prejudice.  *See id.* (citing Ramirez, 922 So. 2d at 390).  If the defense met its initial burden, the burden would have shifted to the State to rebut the resulting presumption of prejudice.  *Id.*  If the trial court found that misconduct occurred, the court would have been required to order a new trial, unless the State proved that the defendant was not prejudiced by the misconduct.  *Id.*  This appellate remedy would have been less favorable to Petitioner than success on the issue his appellate counsel actually raised, that is, that the verdict was against the weight of the evidence, because success on the latter issue would have resulted in an automatic retrial.  *See* State v. Shearod, 992 So. 2d 900 (Fla. 2d DCA 2008) (proper remedy where verdict was against weight of evidence is not verdict of acquittal but new trial).

Appellate counsel's choosing to focus on the central issue that the verdict was contrary to the weight of the evidence, which had a higher probability of success than the weaker juror interview

issue and a more beneficial outcome if successful, was not unreasonable. Therefore, the state court's adjudication of this claim was not an unreasonable application of <u>Strickland</u>.

C.    Ground One:    "Evidence was deficient/insufficient to support convictions."

Petitioner alleges from the date of his arrest, he asserted he was actually innocent of the offenses, and the victim accused him of the crimes in retaliation for his disciplining her (doc. 1 at 4). Petitioner contends there was no medical evidence or facts to support the verdict (*id.*). He alleges defense counsel advised him not to testify on his own behalf, because of his prior prison record (*id.*). Petitioner asserts he raised this claim on direct appeal of his conviction (*id.*).

Respondent contends to the extent Petitioner challenges the legal sufficiency of the evidence on federal due process grounds, he failed to exhaust the claim, because he failed to present it on direct appeal of his conviction and is now procedurally barred from doing so (doc. 16 at 13 n.13). Respondent contends to the extent Petitioner presents the same claim he raised on direct appeal, that the trial court abused its discretion by denying Petitioner's motion for new trial under Rule 3.600(a)(2) of the Florida Rules of Criminal Procedure, the claim is one of purely state law and was raised as such (*id.* at 12–14).

Initially, the issue raised in Ground One does not present a cognizable federal habeas claim. *See* <u>Young v. Kemp</u>, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]"). Further, federal habeas relief cannot be granted based on perceived errors of state law. *See* 28 U.S.C. § 2254(a) (a federal court shall entertain a petition for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); <u>Swarthout v. Cooke</u>, — U.S. —, 131 S. Ct 859, 861, 178 L. Ed. 2d 732 (2011); <u>Pulley v. Harris</u>, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984); <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988).

Additionally, even if Petitioner alleged a violation of his federal rights, he failed to fairly present a federal claim to the state courts. In his initial brief on direct appeal of his conviction, Petitioner argued the trial court abused its discretion by denying his motion for new trial asserting the verdict was against the weight of the evidence (Ex. Q). In support of his argument, he cited Rule 3.600(a)(2) of the Florida Rules of Criminal Procedure and Florida state cases interpreting and

applying Rule 3.600(a)(2) (*id.*). Petitioner did not label his claim "federal" in his initial brief, nor did he cite a federal source of law in conjunction with his claim or a case deciding such a claim on federal grounds. Further, he expressly distinguished his claim from a sufficiency of the evidence claim, which may have a basis in federal law if so argued (*id.* at 17).[10] The only claim Petitioner fairly presented to the First DCA was a state law claim that the trial court erred by denying his Rule 3.600(a)(2) motion because the verdict was against the weight of the evidence. Therefore, the undersigned concludes Petitioner failed to exhaust a federal claim (to the extent he now presents one) in the state courts. *See* Baldwin v. Reese, 541 U.S. at 32.

Any further attempt to exhaust the claim in the state courts would be futile, because a second direct appeal is not available, and any attempt to raise the claim in a second Rule 3.850 motion would be procedurally barred. *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); 3.850(f) (barring second or successive Rule 3.850 motions). Petitioner has not shown cause for his failure to raise a federal issue on direct appeal,[11] nor has he shown he is entitled to review of his claim through the "actual innocence" portal, as discussed *supra*. Therefore, Petitioner is not entitled to federal review of Ground One.

VI.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

---

[10] Petitioner argued: "The evidence presented at trial was superficially sufficient to support the verdict, but it was woefully inadequate. The verdict was enormously against the weight of the evidence." (Ex. Q at 17). He followed this argument with a quotation from a Florida Supreme Court case describing the "two distinct concepts" of weight and sufficiency of evidence (*id.* (citing Tibbs v. State, 397 So. 2d 1120, 1123 (Fla. 1982)).

[11] Although Petitioner raised a claim of ineffective assistance of appellate counsel in his state habeas petition, he did not argue counsel was ineffective for failing to present a federal claim concerning the trial court's denial of his motion for new trial (*see* Ex. T1).

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.	That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.	That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of March 2013.


/s/ *Elizabeth M. Timothy*
_____
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**